**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL FRIEDMAN<br><br>    Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 09-cv-04523 (SDW)<br><br><br>**OPINION**<br><br><br>October 21, 2010 |

   Before the Court is Plaintiff Paul Friedman's ("Friedman") appeal of the Commissioner of Social Security's ("Commissioner") final decision that Friedman is not disabled and therefore not eligible for disability insurance benefits under Title II, 42 U.S.C. § 421 *et. seq.*, or Title XVI, 42 U.S.C. §§ 1381-83, of the Social Security Act (the "Act"). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b). For the reasons discussed below, this Court **REMANDS** the Commissioner's decision.

## BACKGROUND

*i. Procedural History*

   On October 1, 2004 Friedman filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability beginning February 28, 2003 based upon kidney stones, gouty arthritis and arteriosclerotic heart disease. These claims were denied initially and upon reconsideration. (Tr. 34-35, 37.) Friedman subsequently filed a written request for a hearing on October 5, 2005, (Tr. 38) which was held on February 22, 2007 in Newark, NJ (Tr. 473). In an unfavorable decision

dated February 12, 2008 the Administrative Law Judge ("ALJ") concluded that although Friedman's impairments were severe, they were not severe enough to preclude him from having the capacity to perform light work, rendering him not disabled under the Act. (Tr. 15-24.) Friedman now appeals from this decision.

*ii. Medical Evidence*

Friedman was born on April 23, 1957. (Tr. 25.) He was 47 years old when he first filed his application for disability benefits and is now 53 years old. Friedman has a high school diploma and some college education. (Tr. 90.) He has a long work history and earnings record as a manager and supervisor in the construction and property management fields. (Tr. 61-64, 130-34, 140.)

The record contains evidence of several visits Friedman made to Overlook Hospital in Summit, NJ. On January 15, 2004 Friedman was admitted for treatment of hematuria and given a prescription for Cipro. (Tr. 158-68.) Subsequently, he was found to have a nonobscuring 5-mm calcified density in the central upper pole of the left kidney and tests showed positive evidence of exercise induced myocardial ischemia at a high workload. (Tr. 170-74.) Dr. Seaman, Friedman's urologist, treated him for the kidney stones from February 2003 through October 2005 with cystoscopy, stone removal and a stent insertion. (Tr. 175-76, 201-31.) Friedman's medications as of May 23, 2005 were: Tevetan HCT, Norvasc, Metformin, Coreg, Cholchicine and Zocor. (Tr. 230.)

Friedman's cardiologist, Dr. Pumill, saw him several times from 2004 to 2005. During this time Friedman was diagnosed with metabolic syndium and an onset of Type 2 Diabetes with an A1C of 10.1. (186-89.) Treatment notes from 2005 indicate that Friedman was not being

compliant in taking his medications, his glucose control was poor , he experienced nocturia ten times per night, and he was having trouble managing hypertension lipids.  (Tr. 182-85.)

Friedman saw Dr. Rosenbaum, an endocrinologist, for a diabetes consultation on August 30, 2004.  Friedman complained that the medications were making him feel sluggish, his fasting glucose was 151, A1C 9.9% and calcium 9.3.  Dr. Rosenbaum recommended Friedman to take Metformin ER twice per day, undergoing nutritional counseling, and keeping a home glucose log.  (Tr. 241-47.)

Dr. Shammash, who saw Friedman numerous times from November 2005 to March 2007, found that Friedman "ha[d] not been able to work much due to [significant] fatigue," and chronic trouble sleeping and pain from gout.  (Tr. 314, 316, 330.)  A flare up of gout in Friedman's left big toe was recorded on January 13, 2006.  Dr. Shammash's progress notes show that Friedman's ability to work and move around was severely compromised by his medications, that he was feeling fatigued and weak, that he only sleeps four hours per night, and on a day to day basis he feels more fatigue.  (Tr. 308, 314, 316.)  In Dr. Shammash's November 11, 2006 medical assessment of Friedman's ability to do work-related activities, the doctor opined that Friedman's "[functional] capacity is severely limited. . . . pain limit[s] ability to work" and concluded that he "is disabled at this time."  (Tr. 343.)

Dr. Goylan completed a Cardiac RFC Questionnaire on December 15, 2006.  (Tr. 348-53.)  He indicated that Friedman had symptoms of chest pain, shortness of breath, fatigue, weakness, nausea, dizziness, and sweatiness.  (Tr. 348.)  He concluded that Friedman needs frequent breaks during an eight hour work day, would never be able to twist at the waist, was "incapable of even 'low stress' jobs" and  was "disabled" at the time.  (Tr. 350-52.)  In a letter

dated January 2, 2007, Dr. Goylan repeated his opinion that Friedman was "unable to work due to diabetes, hypertension, peripheral neuropathy and depression." (Tr. 366.)

In addition, Friedman's treating psychiatrist, Dr. Gupta, found that Friedman was suffering from Major Depressive Disorder and Generalized Anxiety Disorder, and has a number of medical conditions that are "significant stressors to him." (Tr. 380.) He concluded that Friedman "may not be able to work like before, because of medical and psychiatric comorbidity." (*Id.*)

In October of 2004, Dr. Khlar, a state appointed psychiatrist, reported that "[a]lthough [Friedman] tries to put on a happy face, there is sadness and anxiety, some depression and anxiety," (Tr. 250) and recommended counseling and antidepressants if the symptoms persisted, but Friedman did not think treatment was necessary. (Tr. 251.) Dr. Hattab, a state appointed medical doctor, also examined Friedman and determined that Friedman had "no limitations. However, when the gout flares up, he has moderate to marked limitations, but on today's exam, he had no limitations. Moderate to marked limitations for walking and standing." (Tr. 255.)

Several non-examining state agency analysts also completed RFC assessments. A December 9, 2004 physical RFC assessment found that Friedman's restrictions due to his medical problems were "not credible" because he goes out alone, drives a car and shops. (Tr. 266.) Another RFC assessment states that based on Friedman's 2002 conditions, before the start of his disability claim date, "he had physical RFC for medium work," but a more current stress test was needed. (Tr. 178.) A Mental Residual Capacity Assessment was completed by Dr. Drucker on December 15, 2004 reflecting her opinion that Friedman's Adjustment Disorder created mild limitations. (Tr. 287-304.)

4

*iii. Hearing Testimony*

An administrative hearing was held on February 22, 2007. (Tr. 473-546.) Friedman testified about his work history, describing the litany of medical problems that caused him to stop working, including kidney stones and gout. Concerning the pain caused by his gout, which Friedman said flares up more than once per month and can last for several days (Tr. 537-39), he described it as being "extremely sharp" like "someone sticking a knife and stabbing you." (Tr. 485.)

Friedman testified that, prior to 2003, his gout flare-ups would cause him to miss work and rendered him incapable of fulfilling his duties. (Tr. 486.) Friedman stated that "[o]nce you have gout you can't move . . . you just sit there in bed and it's like you're paralyzed." (Tr. 487.) Moreover, Friedman stated that when he is on his medications he "physically cannot do anything" (Tr. 502-03) and the medications force him "to stay immobile for many, many hours . . . .." (Tr. 497.) Friedman also testified that he is "to the point where [he] had not realized [he] was depressed but [he is] not seeing a psychiatrist to try to maybe get [his] mood back up because . . . [he is] just disgusted . . . ." (Tr. 491.)

Dr. Mellk, a non-examining state physician, testified that, based on his review of the medical evidence and listening to Friedman's testimony at the hearing, Friedman's medical impairments did not individually or in combination meet or equal the listings. (Tr. 518.) Dr. Mellk gave an RFC assessment of light work for six to eight hours with lifting or carrying 20 pounds occasionally and 10 pounds frequently. (Tr. 528.) He questioned the RFC completed by Dr, Shammash which stated that Friedman cannot sit, stand or walk comfortably more than zero hours in an eight hour day based on the fact that Friedman made it to the hearing. (Tr. 529-30.)

5

*iv. Post-Hearing Medical Evidence*

Friedman submitted additional progress notes from Dr. Shammash dated March 22, 2007. (Tr. 382-85.)  These records indicate that Friedman complained of pain and swelling at the end of February of 2007 that lasted seven days, during five of which he could not walk and that he experienced three fainting episodes after taking Uroxatral where he lost consciousness and woke up on the floor in a cold sweat.  (Tr. 383.)  Dr. Shammash also noted that Friedman's sitting was limited due to pain in his neck and lower back; he can sit only for twenty minutes before changing position; his walking is limited and he only goes downstairs once per day; he no longer drives out of concern for his level of alertness and poor reflexes; his sleep remains poor; and he has lost 11-12 lbs and is depressed with a limited appetite.  (Tr 384-85.)

A letter written by Dr. Shammash dated June 7, 2007 lists Friedman's multitude of physical limitations and medical problems.  (Tr. 421.)   Dr. Shammash concludes that the individual objective tests do not reflect the full extent of Friedman's disabilities and that Friedman "is disabled . . . his disability is not due to one medical problem, but due to many which have synergistic effects on impairing physical and emotional functional status, and due to the side effects from the multiple medications he must take." (*Id*.)  Other treatment records from Dr. Shammash are also included.  (Tr. 423-460.)

There are also additional progress notes and test results performed by Dr. Goylan.  (Tr. 388-417.)  Of note, Dr. Goylan indicated that Friedman may be suffering from coronary artery disease in light of an abnormal stress test.  (Tr. 397.)  A stress test of February 28, 2006 showed a positive treadmill ECG for stress induced ischemia, a positive exercise stress test for ischemia, and gated stress LIVEF at 62%.  (Tr. 405.)

There are additional records from a Dr. Stein who treated Friedman on numerous dates from November 2007 to June 2008 regarding his opinion as to Friedman's Listing 12.04 affective disorders and Listing 12.06 anxiety related disorders.  (Tr. 460-63.)

## LEGAL STANDARD

In evaluating the ALJ's decision, this Court must affirm if the decision is supported by "substantial evidence."  42 U.S.C. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (the standard of review is "whether there is substantial evidence in the record" to support the ALJ's decision).  Substantial evidence is "more than a mere scintilla" and is generally thought of as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This court is required to give substantial weight and deference to the ALJ's findings.  *Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). However, the evaluation of the presence of substantial evidence is not merely a quantitative evaluation, but a qualitative one, "without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  Furthermore, even where substantial evidence is found to exist, this Court may still review the ALJ's decision to determine if it was based upon proper legal standards. *Curtin v. Harris*, 508 F. Supp. 791, 795 (D.N.J. 1981) (holding that an ALJ's undue emphasis on certain record evidence was in error because it was based on an "erroneous legal standard").

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

## DISCUSSION

To establish disability under the Social Security Act, Friedman must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). This physical or mental impairment must be so severe as to render Friedman "not only unable to do [his] previous work, but [unable], considering [his] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy . . ." § 423(d)(2)(A). The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is entitled to Social Security disability benefits. *See* 20 C.F.R. § 404.1520.

In step one, the ALJ decides whether the claimant is currently engaged in substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not eligible for disability benefits and the ALJ's inquiry ends. § 404.1520(a). If the claimant is not engaged in such activity, then in step two the ALJ determines whether the claimant is suffering from a severe impairment. If the impairment is not severe, the claimant cannot qualify for disability benefits and the ALJ's inquiry ends. § 404.1520(c). If the impairment is severe, then in step three the ALJ evaluates whether the evidence establishes that the claimant suffers from a listed impairment. § 404.1520(d). If the claimant suffers from a listed impairment, then the claimant is automatically entitled to disability benefits and the ALJ's inquiry ends. *Id*. If the claimant does not suffer such an impairment, then in step four the ALJ reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. § 404.1520(e). If the claimant can perform their past relevant work, the claimant is not eligible for disability benefits and the ALJ's inquiry ends. *Id*. If claimant cannot perform such work, then in

step five the ALJ considers whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and "residual functional capacity." § 404.1520(f). If such work does exist, the claimant is not eligible for disability benefits. *Id*.

With respect to steps one through four of the disability analysis, the ALJ found and the parties do not dispute, that Friedman has not engaged in substantial gainful activity since February 18, 2003, has the severe impairments of kidney stones, gouty arthritis and ateriosclerotic heart disease that do not meet or medically equal the criteria specified in the Listing of Impairments, and does not retain the "residual functional capacity" to perform his past relevant work. This Court must consider whether the ALJ properly determined that (i) Friendman's subjective complaints of pain were not credible and that (ii) a substantial number of jobs exists in the regional and national economy for people with Friedman's age, education, past work experience and RFC at step-five. This Court must also address whether Friedman's newly submitted evidence should be included during any new disability determination.

*i. Subjective Complaints of Pain*

At step five, the ALJ must consider a claimant's subjective complaints of pain and their effects on the claimant's RFC. However, "an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." *Gantt v. Comm'r of Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir.2006) (citations omitted). "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Allegations of pain and other subjective symptoms must be supported by objective medical evidence.

9

In assessing the credibility of a claimant's subjective complaints of pain, the ALJ must consider the factors listed in 20 C.F.R. § 404.1529(c)(3), two of which are "the individual's daily activities" and "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." Concerning a claimant's daily activities, the Third Circuit has held that "sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity." *Fargnoli v. Halter*, 247 F.3d 34, 40 n.5 (3d Cir. 2001).

In the present case, the ALJ found that although Friedman's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 20.) Specifically, the ALJ based her decision, *inter alia*, upon Friedman's past admission that he had the ability to perform certain daily activities such as cooking and cleaning while at the hearing he testified that he lays in bed all day and only ventures downstairs for a bottle of water (Tr. 20).

However, this Court notes that Friedman testified that the pain caused by his frequent gout flare ups is "extremely sharp" like "someone sticking a knife and stabbing you," and incapacitates him for days at a time. (Tr. 485.) Moreover, the medical records of the treating physicians is replete with Friedman's complaints of pain, being consistently documented over the course of several years as being symptomatic of his diagnosed medical conditions. For example: Dr. Pumill noted that Friedman was experiencing symptoms of chest pain, palpitations and numbness or tingling in his feet or hands (Tr. 188-89); Dr. Shammash noted that he has chronic trouble sleeping and pain from gout (Tr. 330), and his "[functional] capacity is severely limited. . . . pain limit[s] ability to work" (Tr. 343); and Dr. Goylan indicated that Friedman had

10

symptoms of chest pain, shortness of breath, fatigue, weakness, nausea, dizziness, and sweatiness (Tr. 348). Even Dr. Hattab, the state's non-examining medical expert, conceded at the hearing that "gout is among one of the most painful [diseases] – acute gouty arthritis is very, very painful . . . while he has an attack he would be incapacitated to one degree or another. (Tr. 518).

Moreover, the activities cited by the ALJ in finding Friedman not credible—using a computer in bed, cooking, cleaning, doing laundry, shopping, driving, using public transportation—are not of the sort that defeats a finding of disability. *See Fargnoli*, 247 F.3d at 40 n.5; *Smith*, 637 F.2d at 971. Friedman's testimony as to these activities, which are largely confined to his home, are in no way inconsistent with his subjective complaints of pain. *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981) ("statutory disability does not mean that a claimant must be a quadriplegic or an amputee [or] that a claimant must vegetate in a dark room excluded from all forms of human and social activity"). Moreover, the minute differences between Friedman's testimony at the hearing as to his daily activities and the other evidence found in the medical record are not contradictory.

Significantly, the ALJ failed to consider the side effects of Friedman's medications as required under the regulations. 20 C.F.R. § 404.1529(c)(3)(iv); *see Schaudeck v. Commissioner*, 181 F.3d 429, 435 (3d Cir. 1999) (holding that the ALJ erred "[b]y failing to consider the drugs that [claimant] was taking throughout her chemotherapy treatment and make 'a thorough discussion and analysis of the objective medical . . . evidence').

On remand, the ALJ must re-evaluate Friedman's subjective complaints of pain in light of the objective medical findings, specifically taking into account the "sporadic and transitory" nature of the claimant's daily activities and the side effects from his medications. 20 C.F.R. § 404.1529; *Hartranft*, 181 F.3d at 362 (holding that subjective complaints of pain must be

11

considered if supported by medical history, clinical findings, diagnosis, daily activities and prescribed treatment).

*ii. Vocational Expert*

In assessing a plaintiff's ability to work, the Third Circuit has held that subjective complaints of pain must be considered and may support a finding of disability. *Green v. Schweiker,* 749 F.2d 1066, 1070 (3d Cir.1984). While the ALJ may rely on the medical vocational guidelines to establish the existence of jobs in the national economy, *see* 20 C.F.R. pt. 404, subpt P, App. 2, 200.00(b), the guidelines are considered substantial evidence for exertional impairments only. *See Maddaloni v. Comm'r of Soc. Sec.*, 340 F. App'x. 800, 803 (3d Cir. 2009); *Sykes*, 228 F.3d at 267 ("[T]he grids cannot automatically establish that there are jobs in the national economy when a claimant has severe exertional and nonexertional impairments."). Impairments are classified as exertional if they affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). Impairments are classified as nonexertional when "the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c).

Here, the ALJ found that Friedman retained the RFC to do a full range of light work with no nonexertional limitations. The ALJ then applied the Medical-Vocational Guidelines' Rule 202.14[1] to find that unskilled jobs existed in the national economy that Friedman could perform. (Tr. 18.) However, Friedman argues that vocational expert testimony was needed because of other nonexertional impairments erroneously not found by the ALJ, including depression, anxiety, pain, fatigue, dizziness and numbness. (Pl.'s Br. 37.)

---

[1] Both parties agree that the ALJ inadvertently cited to Rule 202.21 in her opinion.

As the Court stated earlier, there is evidence in the record regarding Friedman's subjective complaints of pain and extensive supporting evidence from Friedman's treating physicians attesting to the same. *See* discussion *supra*. On remand, the ALJ must specifically consider whether or not Friedman's pain qualifies as being a nonexertional limitation, and if so, further proceedings must be held and a vocational expert must be consulted in order for the Commissioner to carry his burden of proof under step five.

*iii. Additional Medical Evidence*

When a claimant proffers evidence to the district court that was not before the ALJ at the time of the ALJ's decision, the district court may remand to the Commissioner if the evidence is (1) "new," (2) and "material," and (3) if there was "good cause why it was not previously presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (citations omitted). "Thus, we have recognized that evidence first presented to the district court must not only be new and material but also be supported by a demonstration by claimant of 'good cause for not having incorporated the new evidence into the administrative record.'" *Matthews*, 239 F.3d at 592-93 (citing *Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984)).

Here, the ALJ based her decision extensively on the medical reports of examining state physicians Dr. Klahr on October 22, 2004 (Tr. 248-51), Dr. Hattab on November 22, 2004 (Tr. 252-55), and non-examining state physicians Dr. Husain on June 21, 2005 (Tr. 178), Dr. Drucker on December 15, 2004 (Tr. 287-304), an unsigned RFC assessment dated December 9, 2004, and Dr. Mellk's testimony based on his review of the medical evidence at the hearing (Tr. 516-36). Subsequent to the ALJ's decision, Friedman submitted new medical evidence to the Appeals Council after the ALJ reached her decision: progress notes from Dr. Shamash dating from 2006 through 2008 (Tr. 382-85), a letter from Dr. Shammash giving his opinion as to Friedman's

disability dated June 7, 2007 (Tr. 421-22), progress notes from Dr. Goylan dated from 2006 through 2007 (Tr. 388-417), and records from Dr. Stein dating from November 2007 through June 2008 (Tr. 460-63).

The additional evidence proffered by Friedman is clearly "material" as it contains relevant medical records from Friedman's treating physicians relating to his alleged conditions, symptoms, pain, medications, and ability to perform work. It is also undisputed that neither the testifying state physician nor the ALJ considered this additional evidence. More importantly, the submitted records pertain to medical visits that occurred after Friedman was examined by the state physicians. A significant portion of the evidence also relates to medical visits after the ALJ hearing but before the ALJ filed a decision one year later. As good cause is shown, this Court remands the case and directs the ALJ to take into account these new medical records produced by Friedman and to re-analyze his disability status.

## CONCLUSION

For the reasons stated above, the ALJ's decision is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

**s/ Susan D. Wigenton, U.S.D.J.**

Orig:      Clerk
Cc:        Parties